IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SPEED TRAC TECHNOLOGIES, INC., )
)
              Plaintiff, )
) Case No. 1:07cv00417
    v. )
)
ESTES EXPRESS LINES, INC., )
)
             Defendant. )

**MEMORANDUM OPINION AND ORDER**

SCHROEDER, District Judge

    Plaintiff Speed Trac Technologies, Inc. ("Plaintiff"), filed this diversity action alleging causes of action for breach of contract, misappropriation of trade secrets, and unfair and deceptive trade practices under North Carolina law.  Before the court is Defendant Estes Express Lines, Inc.'s ("Defendant"), Motion to Transfer Venue (Doc. No. 11), pursuant to 28 U.S.C. § 1404(a).  For the reasons stated herein, the court grants this motion and transfers venue to the Western District of North Carolina.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiff is a North Carolina corporation with its principal place of business in Charlotte, North Carolina, and licenses automated freight weighing and tracking systems and related software ("System") to freight carriers.  Defendant is a Virginia

corporation with its principal place of business in Richmond, Virginia, and, as a trucking company, operates terminals in several cities nationwide, including Charlotte and Greensboro, North Carolina.

In 2004, Plaintiff discussed licensing the System to Defendant. In February 2004, Plaintiff performed an introductory demonstration of the System at Defendant's Richmond terminal. The parties subsequently executed a Nondisclosure and Equipment Protection Agreement to facilitate a full-scale test of the System at Defendant's Charlotte terminal in April and May 2004. During this testing, Plaintiff alleges to have revealed confidential information to Defendant regarding the System.

At a post-testing meeting in Richmond, Defendant declined to negotiate a licensing agreement with Plaintiff. Defendant instead decided to create its own freight weighing and data transmitting system, with the assistance of third parties. Defendant developed and tested this competing system in Richmond. The competing system is installed in Defendant's Charlotte and Greensboro terminals.

On April 26, 2007, Plaintiff filed this action against Defendant in the Superior Court of Forsyth County, North Carolina.[1] On May 25, 2007, Defendant timely removed this action to the Middle

---

[1] On August 6, 2007, Plaintiff amended the Complaint to include claims for unjust enrichment and disgorgement of Defendant's gains and to clarify its request for injunctive relief.

District of North Carolina, invoking diversity jurisdiction.  On

July 12, 2007, Defendant filed its Motion to Transfer Venue (Doc.

No. 11) to the Western District of North Carolina.  Briefing was

completed on August 1, 2007.

## II.  ANALYSIS

Section 1404(a) authorizes a district court to transfer an

action "[f]or the convenience of parties and witnesses [and] in the

interest of justice . . . to any other district or division where

it might have been brought."[2]  28 U.S.C. § 1404(a) (2006).  In

considering a motion to transfer under section 1404(a), a court

should weigh the following discretionary factors:

> (1) the plaintiff's initial choice of forum; (2)
> relative ease of access to sources of proof; (3)
> availability of compulsory process for attendance
> of unwilling witnesses, and the cost of obtaining
> attendance of willing and unwilling witnesses; (4)
> possibility of a view of the premises, if
> appropriate; (5) enforceability of a judgment, if
> one is obtained; (6) relative advantage and
> obstacles to a fair trial; (7) other practical
> problems that make a trial easy, expeditious, and
> inexpensive; (8) administrative difficulties of
> court congestion; (9) local interest in having
> localized controversies settled at home; (10)
> appropriateness in having a trial of a diversity
> case in a forum that is at home with the state law
> that must govern the action; and (11) avoidance of
> unnecessary problems with conflicts of laws.

---

[2]  The parties do not dispute that the Western District of North
Carolina is a district where this action "might have been brought."

<u>Plant Genetic Sys., N.V. v. Ciba Seeds</u>, 933 F. Supp. 519, 527 (M.D.N.C. 1996) (citation omitted). "The moving party bears the burden of proving that the balance of these factors weighs in favor of transfer." <u>Sweeney v. Pennsylvania Nat'l Mut. Cas. Ins. Co.</u>, No. 1:05CV00931, 2007 U.S. Dist. LEXIS 14189, at *6 (M.D.N.C. Feb. 27, 2007) (citation omitted). "[T]he analysis of these factors is qualitative, not merely quantitative." <u>Commercial Equip. Co. v. Barclay Furniture Co.</u>, 738 F. Supp. 974, 976 (W.D.N.C. 1990). A "court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another." <u>Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.</u>, 841 F. Supp. 719, 721 (M.D.N.C. 1993) (citation omitted).

## A. Plaintiff's Initial Choice of Forum

The plaintiff's choice of forum generally is "entitled to respect and deference," <u>In re</u> <u>Carefirst of Maryland, Inc.</u>, 305 F.3d 253, 260 (4th Cir. 2002), and "should rarely be disturbed."[3] <u>Collins v. Straight, Inc.</u>, 748 F.2d 916, 921 (4th Cir. 1984). This choice receives less weight, however, when (1) the plaintiff chooses a foreign forum, or (2) the cause of action bears little or

---

[3] Although section 1404(a) "is more lenient in authorizing transfers than is the common law doctrine of forum non conveniens," <u>Akers v. Norfolk & Western Ry. Co.</u>, 378 F.2d 78, 79 (4th Cir. 1967) (citing <u>Norwood v. Kirkpatrick</u>, 349 U.S. 29, 31 (1955)), many courts continue to apply the stricter forum non conveniens dismissal standard by requiring the moving party to show that the balance of factors "strongly favors" a transfer. <u>Collins</u>, 748 F.2d at 921. Under either standard, the transfer analysis favors the Western District in this action.

4

no relation to the chosen forum. <u>Harris v. Nussbaum</u>, No. 1:97CV01029, 1998 U.S. Dist. LEXIS 15144, at *10-11 (M.D.N.C. June 19, 1998); <u>see</u> <u>Parham v. Weave Corp.</u>, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) ("the deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action"). Both of these exceptions apply to Plaintiff's choice of forum.

First, Plaintiff filed its Complaint in a foreign forum, the Superior Court of Forsyth County, North Carolina (and, once removed to federal court, the Middle District), even though Plaintiff maintains its principal office in Charlotte, which is in the Western District of North Carolina. The record fails to demonstrate that Plaintiff conducts any business whatsoever in the Middle District, nor does Plaintiff offer any reason for choosing Forsyth County – and consequently by removal, this District – as its venue.[4]

Second, the causes of action bear little or no relation to the chosen forum. Although Plaintiff alleges causes of action for breach of contract, misappropriation of trade secrets, unjust enrichment and unfair and deceptive trade practices, the key operative events appear to have occurred in Charlotte or Richmond,

---

[4] Indeed, had Defendant not removed this action, it would have been eligible to have sought a change of venue elsewhere. N.C. Gen. Stat. § 1-83 (2007).

outside the Middle District.  Plaintiff's trial implementation of

the System occurred at Defendant's Charlotte facility, lasted more

than thirty days, and involved several witnesses located there.  By

contrast, the parties have identified no witness who resides, or

evidence located, in the Middle District.  Although Defendant has

a  terminal  in  Greensboro,  which  is  in  the  Middle  District,

Plaintiff  alleges  only  that  it  is  one  of  the  places  where  the

System is used.  Indeed, by the time Plaintiff brought its motion

to inspect Defendant's competing system on for hearing, the parties

had arranged for the inspection to occur at Defendant's Charlotte,

not Greensboro, facility.

Thus,  the  causes  of  action  lack  virtually  any  discernable

connection  to  the  Middle  District  –  other  than  Plaintiff's

retention of Winston-Salem counsel – which Plaintiff contends is

closer  to  Richmond,  for  purposes  of  discovery.    It  is  the

convenience of parties rather than that of counsel, _In re_ Ralston

Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984), that controls.  In

the  balance,  therefore,  Plaintiff's  choice  of  forum  is  accorded

diminished weight.

**B.    Ease of Access to Sources of Proof**

In weighing this factor, courts consider the relative ease of

access to witnesses and other evidence for trial.  Blue Mako, Inc.

v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2006); Parham, 323

6

F. Supp. 2d at 674.  Courts also examine the number and materiality of witnesses.  <u>Piedmont Hawthorne Aviation, Inc. v. Tritech Envtl. Health & Safety, Inc.</u>, 402 F. Supp. 2d 609, 616 (M.D.N.C. 2005).  If no witness or evidence is within the chosen district, courts will transfer an action to a district with witnesses and evidence.  <u>Kilgus v. Schering-Plough Corp.</u>, No. 3:07CV00188-C, 2007 U.S. Dist. LEXIS 49590, at *7-8 (W.D.N.C. July 9, 2007); <u>Nutrition & Fitness, Inc. v. Blue Stuff, Inc.</u>, 264 F. Supp. 2d 357, 363 (W.D.N.C. 2003).

This factor favors transfer, because all, or virtually all, North Carolina witnesses and evidence are in the Western District. Defendant identified at least seven employees and one third party located in the Western District who are familiar with the testing of Plaintiff's System in the Charlotte terminal and who are potentially important witnesses for trial.  Plaintiff also presumably has its key witnesses and evidence in Charlotte where its principal office is located but, by contrast, has not identified any witness in the Middle District.  Although Plaintiff correctly notes that certain witnesses and documents are in Richmond, the marginally closer proximity of Richmond to the Middle District does not override the convenience afforded to the Charlotte-based parties and evidence, or the absence of any substantial connection between the Middle District and this action. Thus, this factor favors transfer to the Western District.

7

## C.   Local Interest

Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events.  *In re* Volkswagen of Am. Inc., 506 F.3d 376, 387 (5th Cir. 2007).  This factor favors transfer.  The Western District is the location of Plaintiff's principal office, the site of the testing and alleged misappropriation of Plaintiff's technology, the residence of all identified North Carolina witnesses, and the location of  virtually all North Carolina evidence.  By contrast, this action bears little connection to the Middle District.

## D.   View of Premises

Plaintiff argues that it may request a view of the System at trial and that venue in the Middle District is appropriate because the Defendant's Greensboro facility – the only connection to this district that Plaintiff identifies — is close to the present courthouse.  Although jury views of the premises are rarely necessary, photographs and other evidence may not constitute adequate substitutes for a site visit.  National Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 329 (D.N.J. 1995).

If a view of the premises becomes necessary at the trial of this action, the Western District will be the more practicable forum.  First, this action is presently venued in the Winston-

8

Salem, not Greensboro, Division.  Second, Defendant claims that the jury may need to examine its testing site in its Charlotte terminal and that the presence of both parties in Charlotte would facilitate a comparison of the competing systems, an option not available presently because Plaintiff has not claimed to have installed its System anywhere in the Middle District.   Third, Plaintiff's argument for a view of the Greensboro facility is undercut by the fact that when it sought an inspection during discovery, it arranged for it at Defendant's Charlotte facility.  Thus, this factor favors the Western District, Charlotte Division.

**E.   Court Congestion**

When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, caseload per judge, and number of civil cases over three years old.  <u>Triad Int'l Maint. Corp. v. Aim Aviation, Inc.</u>, 473 F. Supp. 2d 666, 671 (M.D.N.C. 2006); <u>Datasouth Computer Corp. v. Three Dimensional Techs., Inc.</u>, 719 F. Supp. 446, 453 (W.D.N.C. 1989).  Courts require a significant difference between districts before finding that congestion merits transfer.  <u>Triad</u>, 473 F. Supp. 2d at 671; <u>Datasouth</u>, 719 F. Supp. at 453.

In this action, the federal court management statistics fail to reveal any significant differences between the Middle District

9

and the Western District.  For the twelve-month period ending September 30, 2007, the median time from filing to disposition is only 1.8 months longer in the Middle District, the pending caseload per judge is only twenty-four more in the Middle District, and the number of civil cases more than three years old is four less in the Middle District.  Administrative Office of the United States Courts, Federal Court Management Statistics, *available at* http://www.uscourts.gov/cgi-bin/cmsd2007.pl  (2007).  These statistics are essentially equivalent.

It is true that a transfer to the Western District might delay the trial date.  But the trial date appears uncertain anyway, because the parties have jointly requested, and the court has granted, an extension of the discovery period to a date which now abuts the current trial date.  Further, while venue considerations should be resolved as early in a proceeding as possible, Defendant timely filed its Motion to Transfer Venue, and any delay in obtaining relief was through no fault of its own.

**F.    Other Practical Problems**

In weighing this factor, courts consider the relative time and expense of travel.  Sweeney, 2007 U.S. Dist. LEXIS 14189, at *9-10; Rice v. BellSouth Advert. & Publ'g Corp., 240 F. Supp. 2d 526, 530 (W.D.N.C. 2002).  Courts also consider whether the transfer would

10

impose any greater burden on the plaintiff.  <u>Verosol B.V. v. Hunter</u>

<u>Douglas, Inc.</u>, 806 F. Supp. 582, 593 (E.D. Va. 1992).

In this action, a transfer would likely reduce the amount of travel-related expenses for the parties and their witnesses. Defendant will bear some expense of travel and accommodations, regardless of the forum, because it will presumably call witnesses from Charlotte and Richmond.  All of Defendant's witnesses would need to travel to a trial in the Middle District.  If the trial is held in the Western District, however, witnesses from the Charlotte area would not need to travel to a distant forum.

A transfer will not impose any greater burden on Plaintiff. Although Plaintiff has not identified any of its witnesses or their residences, the presence of its principal office in Charlotte suggests that its witnesses will be less inconvenienced by a transfer to the Western District than by retention in the Middle District.  This factor thus leans in favor of transfer.

### G.  Remaining Factors

The parties agree that the remaining factors favor neither the Middle District nor the Western District.

### III. CONCLUSION

Based on a consideration of the relevant factors, Defendant has met its burden of showing that the convenience of the parties

11

and witnesses and the interests of justice strongly favor transfer of this action to the Western District of North Carolina.

NOW, THEREFORE, IT IS ORDERED:

1. Defendant's Motion to Transfer Venue (Doc. No. 11) is GRANTED, and this action is TRANSFERRED to the Western District of North Carolina, Charlotte Division.

2. Absent a ruling otherwise by the transferee court, all pretrial deadlines shall remain in effect.


                                    /s/ Thomas D. Schroeder
                                    United States District Judge


Dated: March 4, 2008